**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARCUS WINGROVE, | ) | |
| | ) | No. 2:21-cv 00940 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Judge Robert J. Colville |
| | ) | |
| NATIONWIDE    PROPERTY    AND CASUALTY INSURANCE COMPANY, | ) ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION</u>**

Robert J. Colville, United States District Judge

Before the Court is the Motion to Dismiss (ECF No. 4) filed by Defendant Nationwide Property and Casualty Company ("Nationwide"). Nationwide seeks dismissal with prejudice of certain claims set forth in Plaintiff Marcus Wingrove's ten-count Complaint (ECF No. 1-2). Specifically, Nationwide moves, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss with prejudice Counts II, III, IV, V, VIII, and IX of the Complaint (ECF No. 1-2) filed by Plaintiff Marcus Wingrove. Mot. 1, ECF No. 4. Nationwide further requests, pursuant to Fed. R. Civ. P. 12(f), that the Court strike all references to a "fiduciary duty" from Plaintiff's Complaint, and that the Court further strike the demand for treble damages set forth at Count X of Plaintiff's Complaint. *Id*. The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1332(a). Nationwide's Motion to Dismiss has been fully briefed, and is ripe for disposition.

## I.       Factual Background & Procedural History

The instant action involves an insurance dispute between Plaintiff, who was involved in an automobile accident on or about April 23, 2017, Compl. ¶¶ 14-17, ECF No. 1-2, and his insurer, Nationwide, who allegedly failed to pay, in relation to the automobile accident at issue, underinsured motorist benefits and wage loss benefits to Plaintiff in a timely manner, *id.* at ¶ 46, and who further has, to date, allegedly failed to pay to Plaintiff the total amount of wage loss benefits that Plaintiff was entitled to under the automobile insurance policy issued to Plaintiff by Nationwide, *id.* at ¶ 66.  In the Complaint, Plaintiff sets forth the following factual allegations relevant to the Court's consideration of the Motion at issue:

On April 23, 2017, Plaintiff was involved in an automobile accident that was caused by the negligence of another driver, and, as a result of the accident, Plaintiff suffered severe injuries that have impacted his ability to work.  Compl. ¶¶ 14-27, ECF No. 1-2.  During the timeframe relevant herein, Plaintiff was covered by an automobile insurance policy (the "Policy") issued by Nationwide that covered four vehicles and provided for: (1) underinsured motorist limits of $100,000 per accident/$300,000 per occurrence, stacked; and (2) $100,000 in coverage benefits for wage loss.  *Id.* at ¶¶ 12-13.  Plaintiff filed a lawsuit against the driver of the other vehicle in April of 2019, and eventually settled with the other driver's insurer for the full limits of the other driver's coverage in June of 2020.  *Id.* at ¶ 29.

Following the April 23, 2017 accident, Plaintiff made a timely insurance claim to Nationwide, a first party medical claim was opened, and Nationwide was, accordingly, put on notice of the accident at that time.  Compl. ¶ 26, ECF No. 1-2.  Thereafter, Plaintiff conducted an investigation and concluded that the other driver's insurance limits were inadequate to cover the

bodily injuries suffered by Plaintiff in the accident, and subsequently submitted a timely notice of a potential underinsured motorist claim to Nationwide.  *Id.* at ¶ 28.

With respect to Plaintiff's underinsured motorist benefits claim, Plaintiff provided a formal demand letter and a packet of information to Nationwide, including medical and hospital records, wage loss documentation, lien and out of pocket expenses documentation, and police reports and docket information, on March 27, 2019.  Compl. ¶¶ 30; 35; 44, ECF No. 1-2.  On May 14, 2019, Plaintiff provided notice to Nationwide of the tender of other driver's policy limits.  *Id.* at ¶ 31. Plaintiff's counsel attempted to contact Nationwide in July and September of 2019 to inquire as to the status of Plaintiff's underinsured motorist benefits claim, but counsel did not receive a response.  *Id.* at ¶¶ 32-33.  Despite Plaintiff's provision of extensive information and counsel's efforts to contact Nationwide, Nationwide did not fully and fairly investigate, evaluate, and promptly pay the underinsured motorist benefits claim presented by Plaintiff.  *Id.* at ¶ 35.  On October 18, 2019, Plaintiff's counsel again attempted to contact Nationwide, and left a voicemail stating that the failure to provide an evaluation of the underinsured motorist benefits claim to date established a failure on Nationwide's part to handle the claim in a timely fashion.  *Id.* at ¶ 36.  The voicemail further requested that Nationwide provide an evaluation within two days.  *Id.*

On October 29, 2019, which Plaintiff notes is seven months after the demand letter was sent, Nationwide made an offer of $200,000 with respect to Plaintiff's underinsured motorist benefits claim, but did not provide an evaluation of Plaintiff's claim.  *Id.* at ¶ 37.  On November 11, 2019, Plaintiff's counsel informed a Nationwide representative that counsel believed that Nationwide had not performed its duty to investigate and evaluate the underinsured motorist benefits claim, and that the extended offer of $200,000 was unreasonably low.  *Id.* at ¶ 38. Nationwide formally increased its offer to $300,000 the following day, citing its receipt of one

additional treatment note from one of Plaintiff's medical providers as the basis for an increase. *Id.* at ¶¶ 39-40. Nationwide also cited Plaintiff's failure to provide a physician's note in support of Plaintiff's Social Security Disability claim and a copy of Plaintiff's application for those benefits as the basis for Nationwide's decision to not make a higher offer. *Id.* at ¶ 40. Plaintiff characterizes the same as an attempt by Nationwide to shift its burden to gather information and analyze Plaintiff's claim to Plaintiff. *Id.* at ¶¶ 40-41.

Plaintiff's counsel subsequently provided Nationwide with Plaintiff's application for Social Security benefits, and a note from a treating physician related to that application on December 3, 2019. Compl. ¶ 42, ECF No. 1-2. On December 5, 2019, Nationwide increased its offer to the policy limits of $400,000. *Id.* at ¶ 43. Plaintiff asserts that he has suffered economic loss and severe hardship as a result of Nationwide's delay. *Id.* at ¶ 47.

With respect to Plaintiff's wage loss benefits claim, Plaintiff submitted an application for wage loss benefits to Nationwide on June 21, 2017. Compl. ¶ 49, ECF No. 1-2. Plaintiff avers that he promptly informed Nationwide that he was unable to work, and that he required the use of the wage loss benefits provided by the Policy. *Id.* at ¶¶ 27; 50. On August 7, 2017, Plaintiff provided a completed wage verification form and an excuse from work prepared by Plaintiff's physician to Nationwide's claims adjuster. *Id.* On August 17, 2017, a Nationwide claims representative represented that wage loss benefits had not yet been provided to Plaintiff because Nationwide was experiencing difficulty in obtaining Plaintiff's employment information in order to pay his wage loss benefits, despite the fact that Plaintiff had already provided wage verification from his employer. *Id.* at ¶¶ 51; 52. The claims representative further questioned Plaintiff's treatment plan, the extent of Plaintiff's injury, and whether Plaintiff was entitled to payment of benefits through November of 2017 given the same. *Id.*

On September 5, 2017, a Nationwide claims representative stated that she was in possession of everything necessary to process Plaintiff's wage loss benefits claim, and that Plaintiff would receive his first wage loss benefits check the following Wednesday.  Compl. ¶ 53, ECF No. 1-2.  Plaintiff's counsel contacted Nationwide on September 15, 2017 because Plaintiff still had not received any wage loss benefits, and Nationwide subsequently required Plaintiff to resubmit his medical excuse from work before expediting Plaintiff's request.  *Id.* at ¶ 54.  On October 4, 2017, Plaintiff's counsel sent an email to a Nationwide claims representative to inform Nationwide that Plaintiff would not return to work until December 5, 2017, and to ensure that Plaintiff's wage loss benefits would continue through December 5, 2017 without interruption.  *Id.* at ¶ 55.  The claims representative did not reply to this email.  *Id.*  Despite Plaintiff's counsel contacting Nationwide in October of 2017 to inform Nationwide that Plaintiff's checks had been arriving late, Plaintiff's checks continued to arrive late until December 1, 2017, when Plaintiff's counsel threatened litigation.  *Id.* at ¶¶ 56-57.

Thereafter, Plaintiff attempted to return to work, but was again taken off work by his doctor beginning in April of 2018.  Compl. ¶ 58, ECF No. 1-2.  Plaintiff's physician has noted that Plaintiff might not be able to work for the remainder of his life.  *Id.*  On June 6, 2018, Plaintiff's counsel emailed two Nationwide claims representatives to provide Nationwide with a doctor's excuse for Plaintiff to be taken off work.  *Id.* at ¶ 59.  Plaintiff's counsel spoke with one of these representatives on June 7, 2018, and spoke with the representative again one week later, and, during these conversations, the representative stated that Nationwide would pay no further wage loss benefits, that Plaintiff's file was closed, that Nationwide would send correspondence to Plaintiff's doctors for clarification as to his condition, and that an independent medical evaluation might be scheduled in the future.  *Id.* at ¶¶ 59-60.  On January 29, 2019, Plaintiff provided "off-

work slips" from his physician, along with disability forms, to Nationwide.  *Id.* at ¶ 61.  On April 2, 2019, a Nationwide claims representative contacted Plaintiff's counsel and stated that additional information was required from Plaintiff's employer due to the high amount of wage loss involved. *Id*.  The additional requested wage loss information was promptly provided to this claims representative.  *Id*.  Plaintiff alleges that one specific claims representative, Lauren Prickett, with whom Plaintiff's counsel interacted on several occasions, expressly stated that Plaintiff simply did not want to return to work, and further implied that Plaintiff viewed wage loss benefits as a "vacation."  *Id.* at ¶¶ 63-65.  This representative further stated, directly to Plaintiff during a conversation as to wage loss benefits: "[m]aybe you shouldn't have had so many children' to support."  *Id.*  Nationwide has, to date, paid only a fraction of the wage loss benefits due and owing to Plaintiff under the Policy.  *Id.* at ¶ 66.

In the Complaint, Plaintiff asserts the following claims: Count I (Breach of Contract – underinsured motorist benefits); Count II (Bad Faith Insurance Practices Pursuant to 42 Pa.C.S.A. § 8371 – underinsured motorist benefits); Count III (Bad Faith Insurance Practices – underinsured motorist benefits); Count IV (Unfair Trade Practices – underinsured motorist benefits); Count V (Violation of 75 Pa.C.S.A. § 1716 – underinsured motorist benefits); Count VI (Breach of Contract – wage loss benefits); Count VII (Bad Faith Insurance Practices Pursuant to 42 Pa.C.S.A. § 8371 – wage loss benefits); Count VIII (Bad Faith Insurance Practices – wage loss benefits); Count IX (Unfair Trade Practices – wage loss benefits); and Count X (Violation of 75 Pa.C.S.A. § 1716 – wage loss benefits).

On July 20, 2021, Nationwide filed a Notice of Removal (ECF No. 1) removing this action from the Court of Common Pleas of Fayette County to this District.  Nationwide filed its Motion to Dismiss, along with a Brief in Support (ECF No. 5), on July 27, 2021.  Plaintiff filed a Response

in Opposition (ECF No. 10) and a Brief in Opposition (ECF No. 11) on August 16, 2021. Nationwide filed an amended Reply (ECF No. 15) in support of its Motion to Dismiss on August 26, 2021.

## II.    Legal Standard

### A.  12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff.  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).  While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A "formulaic recitation of the elements of a cause of action will not do."  *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it

"stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The court explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 787. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted).

In addition to reviewing the facts contained in the complaint, a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). When a document integral to or relied upon in the complaint is included, the court may also consider that document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Although a district court is not obligated to permit leave to amend before dismissing a complaint in a non-civil rights case, *Wolfington v. Reconstructive Orthopaedic Assocs. II P.C.*, 935 F.3d 187, 210 (3d Cir. 2019), courts generally grant leave to amend unless amendment of the complaint would be inequitable or futile. *See, e.g., Bachtell v. Gen. Mills, Inc.*, 422 F. Supp. 3d

900, 915 (M.D. Pa. Oct. 1, 2019) (citing *Phillips v. Allegheny Cty.*, 515 F.3d 224, 245 (3d Cir. 2008)).

### B.   12(f)

With respect to motions to strike, Federal Rule of Civil Procedure 12(f) provides that "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Zaloga v. Provident Life & Acc. Ins. Co. of Am.*, 671 F. Supp. 2d 623, 633 (quoting *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F.Supp.2d 393, 402 (E.D. Pa.2002)).  "A decision to grant or deny a motion to strike a pleading is vested in the trial court's discretion."  *Zaloga*, 671 F. Supp. 2d at 633 (citing *Snare & Triest v. Friedman*, 169 F. 1, 6 (3d Cir.1909); *BJC Health System v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir.2007)).  Motions to strike "are not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Hay v. Somerset Area Sch. Dist.*, No. 3:16-cv-229, 2017 WL 2829700, at *3 (W.D. Pa. June 29, 2017) (quoting *Tennis v. Ford Motor Co.*, 730 F.Supp.2d 437, 443 (W.D. Pa. 2010)).

### III.   Discussion

### A.  Motion to Dismiss

Nationwide seeks dismissal of Counts II, III, IV, V, VIII, and IX of the Complaint.  Plaintiff argues that Nationwide's Motion to Dismiss should be denied as to these claims.

### 1.  Count II

Nationwide argues that Plaintiff's claim at Count II for bad insurance practices related to Plaintiff's underinsured motorist benefits claim pursuant to 42 Pa.C.S.A. § 8371 should be

dismissed because Plaintiff merely sets forth legal conclusions in support of his statutory bad faith claim and, therefore, fails to provide adequate factual support for the claim.  Br. in Supp. 7, ECF No. 5.  In response, Plaintiff points to his assertions of bad faith at ¶ 75 of the Complaint, and, in particular, identifies the following assertions:

> [T]he failure to promptly offer reasonable payment to Plaintiff; the failure to objectively and fairly evaluate Plaintiff's claim for underinsured motorist benefits; acting unreasonably and unfairly by withholding underinsured motorist benefits from Plaintiff; engaging in dilatory tactics and abuse in claims handling; failing to have sufficient staff available to evaluate underinsured motorist claims; and failing to reasonably and adequately investigate Plaintiff's claim for underinsured motorist benefits.

Br. in Opp'n 4, ECF No. 11.  Plaintiff argues that each of these assertions is supported by detailed factual allegations set forth in the Complaint that demonstrate the manner in which Nationwide's conduct constitutes bad faith.  *Id.*

"In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured," the Court may award the relief set forth in 42 Pa.C.S.A. § 8371. In addressing the elements of a statutory bad faith claim, the Supreme Court of Pennsylvania has explained:

> In order to recover in a bad faith action, the plaintiff must present clear and convincing evidence (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis.  Additionally, we hold that proof of an insurance company's motive of self-interest or ill-will is not a prerequisite to prevailing in a bad faith claim under Section 8371, as argued by Appellant.  While such evidence is probative of the second *Terletsky* prong, we hold that evidence of the insurer's knowledge or recklessness as to its lack of a reasonable basis in denying policy benefits is sufficient.

*Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 365 (Pa. 2017).  "Bad faith claims are fact specific and depend on the conduct of the insurer vis à vis the insured."  *Condio v. Erie Ins. Exch.*, 899 A.2d 1136, 1143 (2006) (citing *Williams v. Nationwide Mutual Ins. Co.*, 750 A.2d 881, 887

(Pa. Super. 2000)).  An insured must set forth more than "'bare-bones' conclusory allegations that are not accompanied by factual allegations sufficient to raise the claims to a level of plausibility required to survive a Rule 12(b)(6) motion to dismiss." *Kosmalski v. Progressive Preferred Ins.*, No. CV 17-5726, 2018 WL 2045827, at *2 (E.D. Pa. May 2, 2018).

An insurer's "failure to immediately accede to a demand for the policy limit cannot, without more, amount to bad faith." *Smith v. State Farm Mut. Auto. Ins. Co.*, 506 F. App'x 133, 137 (3d Cir. 2012).  "Pennsylvania courts have recognized an insurer's right to investigate and evaluate UIM claims." *Higman v. State Farm Mut. Auto. Ins. Companies*, No. 2:18-CV-00662, 2018 WL 5255221, at *4 (W.D. Pa. Oct. 22, 2018).  A plaintiff may, however, "make a claim for bad faith stemming from an insurer's investigative practices, such as a 'lack of a good faith investigation into facts, and failure to communicate with the claimant.'" *Meyers v. Protective Ins. Co.*, No. 3:16-CV-01821, 2017 WL 386644, at *6 (M.D. Pa. Jan. 27, 2017) (quoting *Romano v. Nationwide Mut. Fire Ins. Co.*, 646 A.2d 1228, 1232 (Pa. Super. 1994)).  "Delay is a relevant factor in determining whether bad faith has occurred, but a long period of time between demand and settlement does not, on its own, necessarily constitute bad faith . . . [I]f delay is attributable to the need to investigate further or even to simple negligence, no bad faith has occurred." *Rowe v. Nationwide Ins. Co.*, 6 F. Supp. 3d 621, 634 (W.D. Pa. 2014) (quoting *Kosierowski v. Allstate Ins. Co.*, 51 F.Supp.2d 583, 588–89 (E.D.Pa.1999) *aff'd*, 234 F.3d 1265 (3d Cir. 2000)).

The Court finds that Plaintiff has set forth sufficient factual allegations to distinguish this case from those cited by Nationwide, wherein the plaintiffs in those case merely set forth generalized and conclusory assertions that an insurer failed to investigate a claim promptly and adequately, failed to properly and objectively evaluate the claim, failed to promptly offer appropriate settlement amounts or negotiate a claim in good faith, or engaged in dilatory behavior.

The Court notes that, if the averments set forth at ¶ 75 were the only assertions set forth in support of Plaintiff's statutory bad faith claim, the Court would agree that Plaintiff fails to set forth sufficient factual allegations to plausibly allege bad faith.  The Court notes, however, that the Complaint describes in sufficient detail the "facts that describe who, what, where, when, and how the alleged bad faith conduct occurred."  *Mondron v. State Farm Mut. Auto. Ins. Co.*, No. CV 16-412, 2016 WL 7384183, at *4 (W.D. Pa. Dec. 21, 2016) (quoting *Liberty Ins. Corp. v. PGT Trucking, Inc.*, No. 2:11-CV-151, 2011 WL 2552531, at *4 (W.D. Pa. June 27, 2011).

As described in the Court's recitation of the facts of the case above, Plaintiff has alleged as follows in the Complaint with respect to his underinsured motorist benefits claim: Plaintiff submitted a timely notice of a potential underinsured motorist claim to Nationwide following the April 23, 2017 accident.  Plaintiff provided a formal demand letter and a packet of information to Nationwide, including medical and hospital records, wage loss documentation, lien and out of pocket expenses documentation, and police reports and docket information, on March 27, 2019.  On May 14, 2019, Plaintiff provided notice to Nationwide of the tender of other driver's policy limits.   Plaintiff's counsel attempted to contact Nationwide in July and September of 2019 to inquire as to the status of the investigation into and evaluation of Plaintiff's underinsured motorist benefits claim, but counsel did not receive a response from Nationwide.  On October 18, 2019, Plaintiff's counsel again attempted to contact Nationwide, and left a voicemail stating that the failure to provide an evaluation of the underinsured motorist benefits claim to date established a failure on Nationwide's part to handle the claim in a timely fashion.  That voicemail further requested that Nationwide provide an evaluation within two days.  Plaintiff heard back from Nationwide on October 29, 2019, when Nationwide made its first offer of $200,000, which Plaintiff characterizes as unreasonably low.   Despite Plaintiff's counsel's previous request,

Nationwide did not provide an evaluation of Plaintiff's underinsured motorist benefits claim at that time. Nationwide ultimately offered the Policy limits of $400,000, but only after, as alleged by Plaintiff, entirely ignoring Plaintiff's counsel's attempts to communicate with Nationwide for a period of seven months and a consistent failure, despite Plaintiff's counsel's requests, to provide an evaluation, conduct an independent investigation, or perform substantive analyses of its own.

Nationwide argues in its Reply that "[t]he factual allegations in [Plaintiff's] Complaint establish that Nationwide spent several months evaluating [Plaintiff's] claim before offering the underinsured motorist limits of the Policy[,]" and also refers to facts and documents that are outside the four corners of the Complaint. Reply 2-3, ECF No. 15. This assertion may ultimately prove to be true, but Nationwide ignores the Court's standard of review with respect to a motion to dismiss. Accepting as true the factual allegations set forth in Plaintiff's Complaint and viewing them in a light most favorable to Plaintiff, as this Court must do at this stage of the proceedings, the Court finds that Plaintiff has alleged facts which tend to support a lack of any investigation or evaluation by Nationwide of Plaintiff's underinsured motorist benefits claim despite Plaintiff's counsel's requests for the same, repeated failure on Nationwide's part to communicate with Plaintiff's counsel despite Plaintiff's counsel's attempts to contact Nationwide, and, accordingly, an entirely unexplained delay of seven months between Plaintiff's demand and Nationwide's offer. Considering the "entire course of alleged dilatory conduct," *Meyers v. Protective Ins. Co.*, No. 3:16-CV-01821, 2017 WL 4516712, at *6 (M.D. Pa. Oct. 10, 2017) (quoting *Barry v. Ohio Cas. Grp.*, No. 04-188, 2007 WL 128878, at *12 (W.D. Pa. Jan. 12, 2007)), the Court finds that Plaintiff has set forth sufficient allegations to support a claim for bad faith related to Nationwide's handling of Plaintiff's claim for underinsured motorists benefits, and the Court will deny Nationwide's Motion to Dismiss with respect to Count II.

### 2.   Counts III and VIII

Plaintiff concedes that his general claims for bad faith conduct at Counts III and VIII are not viable given that he has asserted, with respect to both underinsured motorist benefits and wage loss benefits, claims for bad faith under 42 Pa.C.S.A. § 8371 and claims sounding in breach of contract.  Br. in Opp'n 7, ECF No. 11.  Accordingly, the Court will grant the Motion to Dismiss with respect to Counts III and VIII, and will dismiss these claims with prejudice, as amendment as to these claims would be futile.

### 3.   Counts IV and IX

Nationwide asserts that Plaintiff's claims at Counts IV (underinsured motorist benefits) and IX (wage loss benefits) for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") should be dismissed because Plaintiff does not allege any misrepresentation that was made at the time of the sale of the Policy, but rather alleges that Nationwide failed to comply with its obligations under the Policy in its handling of Plaintiff's underinsured motorist benefits and wage loss benefits claims following the April 23, 2017 accident.  Br. in Supp. 12, ECF No. 5.  Plaintiff argues that his claims for violation of the UTPCPL should not be dismissed because they involve Nationwide's pre-contract formation conduct.  Br. in Opp'n 9-10, ECF No. 11.

With respect to UTPCPL claims that involve an insurance contract, the United States District Court for the Eastern District of Pennsylvania has explained as follows:

> To establish a claim under the UTPCPL, a plaintiff must prove: (1) he or she purchased or leased goods or services; (2) the goods or services were primarily for personal, family or household purposes; and (3) the plaintiff suffered an ascertainable loss as a result of the defendant's unlawful, deceptive act. 73 P.S. § 201–9.2(a). The plaintiff must show that the loss was caused by his or her justifiable reliance on the deceptive conduct.  *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221 (3d Cir.2008) (citing *Schwartz v. Rockey*, 593 Pa. 536, 932 A.2d 885, 897 n.16 (2007); [*Toy v.*

*Metro. Life Ins. Co.*, 593 Pa. 20, 928 A.2d 186, 202 (2007)]; *Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 854 A.2d 425, 438 (2004)).

> The insurance bad faith statute applies to post-contract formation conduct. The UTPCPL, on the other hand, applies to conduct surrounding the insurer's pre-formation conduct. The UTPCPL applies to the sale of an insurance policy. It does not apply to the handling of insurance claims. *Gibson v. Progressive Specialty Ins. Co.*, No. 15–1038, 2015 WL 2337294, at *4 (E.D.Pa. May 13, 2015). Rather, § 8371 provides the exclusive statutory remedy applicable to claims handling. *Id.*; *Bodnar v. State Farm Mut. Ins. Co.*, No. (C.P. Allegheny Oct. 21, 2008). Hence, an insured cannot bring an action under the UTPCPL based on the insurer's failure to pay a claim or to investigate a claim. *Nordi v. Keystone Health Plan W., Inc.*, 989 A.2d 376, 385 (Pa.Super.2010); *Horowitz v. Fed. Kemper Life Assur. Co.*, 57 F.3d 300, 307 (3d Cir.1995) (citing *Gordon v. Pa. Blue Shield*, 378 Pa.Super. 256, 548 A.2d 600, 604 (1988)).

*Kelly v. Progressive Advanced Ins. Co.*, 159 F. Supp. 3d 562, 564–65 (E.D. Pa. 2016); *see also Wenk v. State Farm Fire & Cas. Co.*, 228 A.3d 540, 550(Pa. Super. 2020) ("The UTPCPL applies to the sale of an insurance policy, it does not apply to the handling of insurance claims, as alleged herein." (citing *Neustein v. Government Employees Insurance Co.*, 2018 WL 6603640 at *2 (W.D. Pa. filed November 29, 2018))).

In this case, Plaintiff fails to state a claim for a violation of the UTPCPL, as it is clear that the allegations in Plaintiff's Complaint relate only to Nationwide's handling of Plaintiff's insurance claims, and not the sale of the Policy. Plaintiff fails to identify a single specific misrepresentation made by Nationwide at the time Nationwide sold the Policy to Plaintiff, and, in essence, simply points to the Policy in asserting that Nationwide misrepresented that Nationwide would handle insurance claims in the manner in which it was required to under the Policy. Section 8371 provides the exclusive statutory remedy applicable to claims handling. *Kelly*, 159 F. Supp. 3d at 564. Because Plaintiff's allegations relate only to the manner in which Nationwide handled Plaintiff's insurance claims, the Court will grant the Motion to Dismiss with respect to Counts IV

and IX.  Because amendment of these claims would be futile, the Court will dismiss Counts IV and IX with prejudice.

### 4.  Count V

Nationwide argues that Plaintiff's claim at Count V asserting a violation of 75 Pa.C.S.A § 1716 arising out of Nationwide's alleged failure to promptly pay underinsured motorist benefits to Plaintiff should be dismissed because Section 1716 does not provide for the recovery of underinsured motorist benefits.  Br. in Supp. 16, ECF No. 5.  More specifically, Nationwide argues that Section 1716 is contained within the subchapter of the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL") that speaks to first party benefits, 75 Pa.C.S.A. §§ 1711-1725, and not the subchapter of the MVFRL that covers underinsured motorist benefits, 75 Pa.C.S.A. §§ 1731-1738.  *Id.*  Nationwide further argues that neither uninsured nor underinsured motorist benefits are listed in the MVFRL's definition of "benefits" or "first party benefits."  *Id.* at ¶ 17.  Defendant asserts that, accordingly, no cause of action exists under 75 Pa.C.S.A § 1716 for an insurer's failure to pay underinsured motorist benefits.  *Id.*  Plaintiff acknowledges Section 1716's placement in the MVFRL, but argues that Pennsylvania courts consider underinsured motorist claims to be a "hybrid" of first-party claims and third-party claims, and that underinsured motorist claims are thus entitled to the protection of Section 1716.  Br. in Opp'n 11, ECF No. 11.

Section 1716 of the MVFRL provides:

Benefits are overdue if not paid within 30 days after the insurer receives reasonable proof of the amount of the benefits.  If reasonable proof is not supplied as to all benefits, the portion supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer.  Overdue benefits shall bear interest at the rate of 12% per annum from the date the benefits become due.  In the event the insurer is found to have acted in an unreasonable manner in refusing to pay the benefits when due, the insurer shall pay, in addition to the benefits owed and the interest thereon, a reasonable attorney fee based upon actual time expended.

75 Pa.C.S.A § 1716.  Section 1702 defines "[b]enefits" or "first party benefits" as: "[m]edical benefits, income loss benefits, accidental death benefits and funeral benefits." 75 Pa.C.S.A § 1702. "Underinsured motor vehicle" and "[u]ninsured motor vehicle" are also separately defined at Section 1702.

Plaintiff's claim for violation of 75 Pa.C.S.A § 1716 at Count V fails because the plain and unambiguous language of the MVFRL makes clear that Section 1716 does not apply to claims for underinsured motorist benefits.  Section 1716 applies to "benefits," which the MVFRL does not define to include underinsured motorist benefits.  Section 1716 is also located in Subchapter B of the MVFRL, which is titled: "Motor Vehicle Liability Insurance First Party Benefits."  The Court agrees with Nationwide that, had the legislature desired to include underinsured motorist benefits in its definition of "benefits," it could have, and presumably would have, done so.  The legislature also could have included a section similar to Section 1716 in Subchapter C of the MVFRL, which is titled "Uninsured and Underinsured Motorist Coverage."  It did not, and the Court concludes that, under the plain and unambiguous provisions of the MVFRL, Plaintiff cannot bring a claim for underinsured motorist benefits under Section 1716.

The Court's conclusion is bolstered by case law which speaks to the importance of the organization of the MVFRL into subchapters, as well as case law which, when considering a Section 1716 claim, speaks only to "first party benefits."  *See Westbrook v. Robbins*, 611 A.2d 749, 752 (Pa. Super. 1992) ("[W]hen construing the MVFRL it is important to pay close attention to the language of the act, itself, and the statute's organization into subchapters." (citing *Hackenberg v. Southeastern Pennsylvania Transportation Authority*, 586 A.2d 879 (Pa. 1991))); *see also id.* at 754 ("However, the attorney's fees and interest provision in subchapter B has no such parallel in subchapter E.  The parallelism of the subchapters indicates the legislature intended

17

each to stand on its own.  Otherwise, there would have been no need to duplicate similar provisions in each subchapter.  Thus, had the legislature intended subchapter E to include a provision for attorney's fees and interest, it would have inserted one.  We will not now read such a provision into subchapter E."); *Motorists Ins. Companies v. Emig*, 664 A.2d 559, 568 (Pa. Super. 1995) ("Sections 1734 and 1791 are both provisions of the MVFRL.  Section 1734 is part of Subchapter 'C' of the MVFRL, and Section 1791 is found in Subchapter 'I' thereof.  This distinction is important because we are required to heed closely to the subchapters into which the various provisions of the MVFRL are organized.  We will not apply a provision in one subchapter to interpret a provision in another subchapter, especially when to do so cuts against the grain of legislative intent." (citations omitted)); *Hill v. Nationwide Ins. Co.*, 570 A.2d 574, 579 (Pa. Super. 1990) (explaining that "Section 1716 of the MVFRL permits the recovery of attorney fees *in an action for first-party benefits* by an insured where the insurer has 'acted in an unreasonable manner in refusing to pay the benefits when due.'" (emphasis added)); *Richter v. Geico Indem. Co.*, 797 F. Supp. 2d 529, 533 (E.D. Pa. 2011) (same).

Moreover, the Superior Court of Pennsylvania has also discussed material distinctions that exist between first party benefits and underinsured or uninsured motorist benefits.  *See Pantelis v. Erie Ins. Exch.*, 890 A.2d 1063, 1067 (Pa. Super. 2006) ("Our jurisprudence reveals that, in the case of first party benefits, the 30–day period set forth in § 1716 can be triggered by something as simple as submission of a bill from a medical provider.  On the other hand, legal entitlement to recovery of uninsured motorist benefits for purposes of § 1731(b) is based on the wrongful conduct of a third party." (citations omitted)).  In *Pantelis*, the Superior Court explained that "[t]he statutory framework and applicable case law establishes that payment of UM/UIM claims is subject to a different analysis than payment of first party benefits."  *Pantelis*, 890 A.2d at 1068.  This holding

lends support to the Court's conclusion that, unless the legislature expressly provides otherwise, the Court should not apply a provision from the subchapter dealing with first party benefits to the underinsured motorist benefits, which are subject to an entirely separate subchapter, that are at issue in this case.

For the reasons discussed above, the Court finds that Plaintiff cannot state a separate claim for underinsured motorist benefits under Section 1716 of the MVFRL. Amendment of this claim would be futile. Accordingly, the Court will grant Nationwide's Motion to Dismiss as to Count V, and will dismiss Count V with prejudice.

### B. Motion to Strike

#### 1. References to a "Fiduciary Duty"

Nationwide argues that the Court should strike any reference to a "fiduciary duty" in Plaintiff's Complaint because "[i]t is well-established that an insurer does not owe a fiduciary duty to an insured in the context of an underinsured/uninsured motorist benefits claim[,]" Br. in Supp. 17, ECF No. 5, and, with respect Plaintiff's first party wage loss benefits claim, because the Complaint fails to allege that "Nationwide asserted a Policy right to handle a claim asserted against [Plaintiff], or any other exceptional circumstances that would create a fiduciary duty under Pennsylvania law[,]" *id.* at 19. Nationwide asserts that, at most, Nationwide had a contractual duty to act in good faith, and that Plaintiff has separately alleged a breach of that duty in his breach of contract claim. *Id.* at 19-20. Nationwide argues that Plaintiff's references to a fiduciary duty are superfluous and confusing. *Id.* at 17.

Plaintiff argues that he has not asserted or attempted to assert a separate claim for breach of fiduciary duty, and that there is no need to employ the drastic remedy of striking references to a fiduciary duty. Br. in Opp'n at 11-12, ECF No. 11. In a similar case where an insurer sought to

strike any references to a "fiduciary duty" from a complaint "because no fiduciary duty is owed and keeping the references will cause confusion," the United States District Court for the Eastern District of Pennsylvania held that there was no reason to employ such a drastic remedy. *Tubman v. USAA Cas. Ins. Co.*, 943 F. Supp. 2d 525, 531 (E.D. Pa. 2013). At this early stage of the litigation, this Court tends to agree with the court's holding in *Tubman*, and the Court will deny the Motion to Strike insofar as it requests that the Court strike all references to a "fiduciary duty" from the Complaint. The Court simply does not perceive any prejudice or true risk of confusion at this juncture, especially given Plaintiff's acknowledgement that he is not pursuing a separate claim for breach of a fiduciary duty. The Court notes that its denial of the Motion to Strike as to this issue is without prejudice to Nationwide raising this issue at a later stage of the litigation, if Nationwide believes that the same is warranted and appropriate.

### 2. Demand for Treble Damages at Count X

Nationwide argues that nothing within the plain language of Section 1716 permits the recovery of treble damages, Br. in Supp. 20, ECF No. 5, and Plaintiff provides no argument whatsoever to the contrary. While Plaintiff argues that his request for attorney's fees at Count X should not be stricken, Br. in Opp'n 12, ECF No. 11, Nationwide has clarified that its Brief in Support mistakenly included a request to strike Plaintiff's request for attorney's fees, and that its Motion does not seek to strike Plaintiff's request for attorney's fees at Count X, Reply 6, ECF No. 15. The Motion itself, the proposed order, and the Brief in Support all clearly request that the Court strike Plaintiff's demand for treble damages at Count X, and Plaintiff's Brief in Opposition clearly recognizes the same. Given that there is no opposition to Nationwide's request to strike Plaintiff's demand for treble damages at Count X, the Court will grant the Motion to Strike to the

extent it requests that the Court strike Plaintiffs' demand for treble damages at Count X of Plaintiff's Complaint.

**IV.    Conclusion**

For the reasons discussed above, the Court will grant in part and deny in part Nationwide's Motion to Dismiss.  An appropriate Order of Court follows.

BY THE COURT:

s/*Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: March 28, 2022

cc: All counsel of record